# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| FRANK L. FORD,<br>  Appellant, | DOCKET NUMBER<br>SF-0752-18-0703-I-2 |
| v. | |
| DEPARTMENT OF COMMERCE,<br>  Agency. | DATE: September 19, 2024 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Frank L. Ford, Army Post Office/Fleet Post Office, Europe, pro se.

Ashley Geisendorfer, Esquire, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member

## REMAND ORDER

The appellant has filed a petition for review of the initial decision, which affirmed the agency's removal action. For the reasons discussed below, we GRANT the appellant's petition for review, VACATE the initial decision, and REMAND the case to the Western Regional Office for further adjudication in accordance with this Remand Order.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

## BACKGROUND

The appellant was the Chief Steward onboard the ship "Fairweather" with the agency's National Oceanic and Atmospheric Administration (NOAA). Initial Appeal File (IAF), Tab 9 at 4-5. Following complaints made against the appellant by current and former subordinates, an outside organization conducted an investigation into the appellant's alleged misconduct. *Id.* at 41. At the conclusion of the investigation, which included interviewing numerous individuals and reviewing documentation, the investigator found evidence supporting several complaints against the appellant. *Id.* at 41-57. Thus, on June 23, 2017, the Commanding Officer of the Fairweather proposed to remove the appellant based on one charge of conduct unbecoming. *Id.* at 36. The charge contained six specifications, setting out various incidents wherein the appellant allegedly exhibited disregard for the ship's crew members and mistreated his staff. *Id.* at 36-37. For example, according to two specifications, the appellant instructed subordinates to bleach off expiration dates and serve expired food, and made comments such as "the crew didn't deserve any snacks." *Id.* at 36. Other specifications additionally set out that the appellant instructed the General Vessel Assistant (GVA) to be available to work on a day she was on leave, physically moved her out of the way on one occasion, and deliberately assigned her more work than she could complete while instructing other staff not to assist her. *Id.* at 37. The appellant provided both a written and oral reply to the charge. IAF, Tab 8 at 90-94, Tab 9 at 5, 11-33.

Following the appellant's reply, the Commanding Officer of NOAA's Center-Pacific Marine Operations issued a decision affirming the charge and removing the appellant, effective July 25, 2017. IAF, Tab 9 at 5-10. The appellant challenged this action before the Board, alleging discrimination based on age and race, whistleblower retaliation, and a due process violation. IAF, Tab 2 at 2. The administrative judge dismissed the appeal in October 2018, without prejudice to refiling, at the appellant's request. IAF, Tab 26, 29, Initial

Decision. After automatically refiling the appeal in December 2018, the administrative judge canceled the hearing as a sanction for the appellant's failure to file timely prehearing submissions. Refiled Appeal File (RAF), Tab 5 at 2, Tabs 6-7, Tab 19, Initial Decision (ID) at 1, 3-4. The administrative judge issued an initial decision on the written record affirming the agency's removal action. ID at 1.

The administrative judge sustained all six of the agency's specifications, crediting several individuals' sworn statements over the appellant's statements. ID at 7-19. The administrative judge found that the appellant had not proved his allegations of due process violations or discrimination based on race or age. ID at 20-27. Additionally, the administrative judge held that the appellant failed to establish his claim of whistleblower retaliation, finding that the appellant failed to prove he made a protected disclosure that was a contributing factor in a personnel action. ID at 27-31. The administrative judge further found a nexus between misconduct and the efficiency of the service. ID at 19-20. Finally, the administrative judge determined that the penalty of removal was within the tolerable bounds of reasonableness. ID at 31-34.

The appellant has filed a petition for review, arguing that the agency failed to prove its charge and specifications. Petition for Review (PFR) File, Tab 11 at 12-14. In doing so, he cites the testimony of some of his listed witnesses, who he argues would have rebutted the charge. *Id.* at 12-13; RAF, Tab 6 at 6-7. He additionally repeats his arguments of a due process violation and whistleblower retaliation and attaches numerous documents to his petition. PFR File, Tab 11 at 4-61. The agency has responded to the appellant's petition for review. PFR File, Tab 14.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>The administrative judge abused her discretion in canceling the appellant's requested hearing.</u>

The administrative judge here canceled the hearing and issued a decision on the written record. RAF, Tab 5 at 2. The appellant asserts on review that several of his witnesses did not testify. PFR File, Tab 11 at 12-13. For example, he argues that he listed as witnesses two Chief Cooks who were present during his discussion with the GVA, in which the agency alleged he improperly instructed her to be available to work on her days off. PFR File, Tab 11 at 12-13; IAF, Tab 9 at 37; RAF, Tab 6 at 6-7. According to the appellant, the Chief Cooks would have testified that the GVA "agreed to the deal" that she be available to work if needed, but "no one ever called them to get their side of the story." PFR File, Tab 11 at 12.

As another example, the appellant asserts that he listed the Executive Officer of the Fairweather as a witness to "attest to the fact that [he] created [the GVA's] work load and not [the appellant]."[2] *Id.* at 13; RAF, Tab 6 at 6-7, Tab 16 at 5, 7-8, 10-13. His argument is in response to the administrative judge's finding that the agency proved its specification that he assigned an unreasonable amount of work to the GVA, and that the appellant failed to prove that the Executive Officer was responsible for the GVA's workload. ID at 18-19; IAF, Tab 9 at 37.

We interpret the appellant's arguments regarding these witnesses liberally, particularly in light of his pro se status. *See Melnick v. Department of Housing & Urban Development*, 42 M.S.P.R. 93, 97-98 (1989) (explaining that an

---

[2] Contrary to the appellant's claim on review, it does not appear that he listed the Commanding Officer of the Fairweather as a witness to attest to these same alleged facts. PFR File, Tab 11 at 13; RAF, Tab 6 at 6-7, Tab 16 at 5, 7-8, 10-13. He identified as witnesses the current Executive Officer as well as someone he indicated previously holding the position. IAF, Tab 9 at 53; RAF, Tab 6 at 6-7, Tab 16 at 7. On remand, the administrative judge should get clarification from the parties as necessary and make determinations as to whether to grant each party's request for any particular witness. *See* 5 C.F.R. § 1201.41(b)(8), (10) (reflecting the authority of the administrative judge to rule on witness lists and order the production of witnesses whose testimony would be relevant, material, and nonrepetitious).

administrative judge is expected to interpret pleadings liberally, and that parties without the benefits of legal counsel are not required to plead the issues with the precision of an attorney), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (Table).  Thus, although not framed as a denial of his right to a hearing, we view his arguments regarding the lack of witness testimony as raising this issue on review.  *See Siman v. Department of the Air Force*, 80 M.S.P.R. 306, ¶¶ 6-7 (1998) (remanding an appeal for a hearing if requested because the administrative judge did not fully advise the appellant of his options of a hearing by telephone or video, even though the appellant did not specifically raise hearing-related issues on review). Under the facts of this case, we find that the administrative judge abused her discretion by canceling the hearing, and we thus vacate the initial decision.

An administrative judge has the authority to sanction a party when necessary to serve the ends of justice.  *Heckman v. Department of the Interior*, 106 M.S.P.R. 210, ¶ 8 (2007), *overruled on other grounds by Garcia v. Department of Agriculture*, 110 M.S.P.R. 371, ¶¶ 8-12 (2009); 5 C.F.R. § 1201.43.  That authority includes the right to sanction a party for failure to comply with an order.  *Heckman*, 106 M.S.P.R. 210, ¶ 8.  An appellant's right to a hearing, however, should not be denied as a sanction absent extraordinary circumstances.  *Id.*; 5 C.F.R. § 1201.43(e) (reflecting that an administrative judge may cancel a hearing for contumacious conduct or conduct prejudicial to the administration of justice).  Indeed, there is a strong policy consideration that an appellant receive a hearing on the merits of a case.  *Siman*, 80 M.S.P.R. 306, ¶ 6. A single failure to comply with an order is not sufficient to show a lack of due diligence, negligence, or bad faith in the appellant's compliance with an administrative judge's orders, so as to justify a drastic sanction such as precluding the presentation of evidence at a hearing.  *Sims v. U.S. Postal Service*, 88 M.S.P.R. 101, ¶ 7 (2001); *see Hart v. Department of Agriculture*, 81 M.S.P.R. 329, ¶ 7 (1999) (explaining that an appellant's inadvertent failure to comply with

an administrative judge's order is not an extraordinary circumstance that warrants the extreme sanction of the denial of a hearing).

The administrative judge originally set a deadline in October 2018 for the parties to submit prehearing submissions. IAF, Tab 22 at 2-3. However, she later acknowledged the appellant's request for an "extension on [his] case" because he was working in Iraq without reliable mail service or internet until December 21, 2018. IAF, Tabs 26, 28. She issued an initial decision dismissing the appeal without prejudice, with an automatic refiling date of December 14, 2018. IAF, Tab 29. On the same day, she issued an order that, after the automatic refiling of the appeal, the parties were to file prehearing submissions by December 17, 2018. IAF, Tabs 28-29. She did not explain why she set the prehearing submission deadline 4 days before the appellant was due to return from Iraq and neither the initial decision dismissing the appeal without prejudice, nor the order of the same date stated that the parties could object to the December 17, 2018 deadline.[3]

After the appeal was automatically refiled, the agency timely submitted prehearing submissions on December 17, 2018. RAF, Tab 3. The appellant, however, did not. On December 21, 2018, the same day the appellant returned from Iraq, the administrative judge issued an order to the parties advising them that, in the event of a Government shutdown, the prehearing conference date was rescheduled for early January, and the hearing would "be deemed postponed." RAF, Tab 4. She did not set a new date for the hearing. *Id.* Many Government operations were, in fact, shutdown from December 22, 2018, to January 26, 2019, including the Board's adjudicatory function. RAF, Tab 7 at 2.

On May 3, 2019, the administrative judge issued an order setting a date for the record to close. RAF, Tab 5 at 2-3. She stated that because the appellant did not file prehearing submissions or request witnesses, "there is no justification for a hearing to be rescheduled." *Id.* at 2. Three weeks later, the appellant filed a

---

[3] The administrative judge made general statements regarding the parties' ability to object in other orders, but did not specifically advise them in the orders at issue here. IAF, Tab 3 at 3; RAF, Tab 2 at 1.

motion to extend his time to file his prehearing submissions. RAF, Tab 6. He stated under penalty of perjury that he missed the December 17, 2018 deadline because he was in Iraq until December 21, 2018. RAF, Tab 6 at 4-5; *Edwards v. Department of Veterans Affairs*, 111 M.S.P.R. 297, ¶¶ 4, 6 (2009) (stating that if unrebutted, an affidavit or a declaration made under penalty of perjury proves the facts asserted therein). With his motion, he requested exhibits and provided a witness list.[4] *Id.* at 6-7. The administrative judge subsequently found no good cause for the appellant's untimely filing and declined to reschedule the hearing. RAF, Tab 7 a 2.

We disagree that the appellant failed to show good cause for his delay. While we acknowledge his 5-month delay was lengthy, the circumstances as a whole reflect that it was due to his confusion. Specifically, as to his failure to submit his prehearing submissions by December 17, 2018, the appellant was out of the country until December 21, 2018, and his pleadings reflect his mistaken belief that his prehearing submissions were due on that later date. RAF, Tab 6 at 3, 5. This confusion was caused, in part, by the administrative judge's order scheduling the December 17, 2018 deadline because, in the same order, she acknowledged that the appellant was "overseas and without reliable communication until December 21, 2018." IAF, Tab 28 at 2. Further, the administrative judge's order on December 21, 2018, regarding a potential Government shutdown led the appellant to believe, according to his sworn statement, that "[his] case was closed." RAF, Tab 6 at 3.

The circumstances here are similar to those in *Hart*, 81 M.S.P.R. 329, ¶¶ 2-3, 5-7, in which the Board found that an administrative judge abused her discretion when she canceled an appellant's requested hearing due to the appellant's failure to make herself available for a scheduled prehearing

---

[4] The appellant subsequently filed a second submission titled Prehearing Submissions. RAF, Tab 16 at 4. Although not entirely clear, based on the timing, it appears that he intended this document and its attachments to be his close-of-record submission. RAF, Tab 14 at 1, Tab 16.

conference. The Board reasoned the appellant mistakenly but inadvertently relied on statements by the agency representative that the administrative judge would likely dismiss the case without prejudice, thus presenting good cause for her failure to comply with administrative judge's order. *Id.*, ¶¶ 6-7. For the same reasons, we find that the appellant's misunderstandings of the process, created in part by the administrative judge's orders, are good cause for his failure to submit prehearing submissions by December 17, 2018, and thereafter.

Further, following the administrative judge's December 21, 2018 order advising of a potential Government shutdown, no activity took place on the case until she issued the May 3, 2019 order that canceled the hearing. RAF, Tab 5. The administrative judge did not provide the appellant with either a show cause order or some other opportunity to explain his failure to meet the prehearing submission deadline. *Id.* Therefore, we cannot agree with the administrative judge that the appellant's failure to follow a single order, i.e., his delay in filing prehearing submissions until May 24, 2019, justified the extraordinary sanction of canceling the hearing. RAF, Tab 6; *see Sims*, 88 M.S.P.R. 101, ¶ 8 (citing the lack of a show cause order as further support for the determination that an appellant's failure to participate in a single prehearing conference was insufficient to justify the sanction of cancelation of the hearing).

The appellant on review attached numerous documents, including the results of two polygraph examinations, a statement from a prior member of the Fairweather refuting the agency's charges, performance reviews, a letter of reprimand against the GVA who made allegations against the appellant, and various email threads. PFR File, Tab 11 at 16-61. On remand, the administrative judge may allow the parties an opportunity to supplement the record with this and other evidence if she determines doing so is appropriate.

<u>After the record closes in the remanded appeal, the administrative judge should issue a new initial decision.</u>

The appellant on review denies each of the specifications and argues that his conduct was not unbecoming. PFR File, Tab 11 at 12-14. The administrative judge held that the agency proved each of the specifications by preponderant evidence. ID at 7-19. Because we are vacating the initial decision and remanding this appeal for a hearing, we need not reach the question of whether the agency sufficiently met its burden.

<u>On remand, the administrative judge should make new findings regarding the appellant's affirmative defenses.</u>

*Due process and harmful error*

The appellant on review repeats his argument from below that, because his ship's crew was instructed not to contact him, he was denied due process in obtaining statements that could aid his defense. PFR File, Tab 11 at 14; RAF, Tab 18 at 5. The administrative judge held that the appellant failed to meet his burden of proving a due process violation; he was, rather, provided the requisite notice and opportunity to respond to the proposed removal. ID at 20-23. Taking as true the facts alleged by the appellant, we agree with the administrative judge.

An agency's failure to provide a tenured public employee with an opportunity to present a response, either in person or in writing, to an appealable agency action that deprives him of his property right in his employment constitutes an abridgement of his constitutional right to minimum due process of law, i.e., prior notice and an opportunity to respond. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). However, at the predecisional stage, an employee does not have a due process right to a hearing or a formal investigation. *See Mercer v. Department of Health & Human Services*, 772 F.2d 856, 859 (Fed. Cir. 1985) (finding that the denial of a predecisional hearing did not implicate the constitutional issue in *Loudermill*); *Alsedek v. Department of the Army*, 58 M.S.P.R. 229, 240-41 (1993) (determining that an

agency did not violate an appellant's due process rights when it elected to conduct an informal, rather than a formal, investigation). By analogy, we find that there is no due process right to interview witnesses before responding to a proposed adverse action.

Instead, minimum due process generally requires prior notice and an opportunity to respond to an appealable agency action. *Ronso v. Department of the Navy*, 122 M.S.P.R. 391, ¶¶ 12-13 (2015) (declining to find a due process violation when a deciding official delegated the task of receiving oral replies to a designated official). The appellant here made both written and oral replies to the proposed removal. IAF, Tab 9 at 5, 15-17. Moreover, the notice of proposed removal here specifically set out the charge and specifications used in disciplining the appellant. *Id.* at 36-40. Accordingly, we find that, as a matter of law, the agency provided the appellant the requisite minimum due process. When there is no dispute of material fact and the outcome of the appeal is a matter of law, the hearing may be limited to an opportunity to present oral argument on the dispositive legal issue. *Wible v. Department of the Army*, 120 M.S.P.R. 333, ¶ 8 (2013). Therefore, on remand, unless the appellant raises new factual allegations that present a due process concern, the administrative judge may limit him at the hearing to presenting only oral argument on this issue.

The administrative judge also found that the appellant failed to prove harmful error regarding the agency's alleged instructions to the crew not to communicate with him because he did not identify any law, rule, or regulation the agency violated, or explain how any error was harmful. ID at 23 n.4. Although not entirely clear, we interpret the appellant's arguments on review as re-raising this harmful error claim. PFR File, Tab 11 at 14. It does not appear that the administrative judge gave notice of how to prove harmful error below. RAF, Tab 5 at 3-13. The Board has consistently required administrative judges to apprise an appellant of the applicable burdens of going forward with the evidence and of proving a particular affirmative defense, as well as the kind of evidence

the appellant is required to produce to meet his burden.[5]  *Erkins v. U.S. Postal Service*, 108 M.S.P.R. 367, ¶ 8 (2008).  Therefore, on remand, the administrative judge must provide the appellant with this notice so that he can attempt to meet his burden.

*Whistleblower reprisal*

The appellant on review re-raises his argument that his removal was retaliation for his disclosure regarding the disappearance of $15,000 worth of meat.  PFR File, Tab 11 at 14.  The administrative judge held that the appellant failed to establish that he made a protected disclosure that was a contributing factor in his removal.  ID at 27-30.  She alternatively found that, even if the appellant could establish his prima facie case, the agency met its burden to prove by clear and convincing evidence that it would have removed the appellant absent any protected disclosure.  ID at 30-31.  On remand, the administrative judge should make new findings on this affirmative defense following the close of the record, consistent with the guidance below.

In an adverse action appeal such as this one, an appellant's claim of whistleblower reprisal is treated as an affirmative defense.  *Campbell v. Department of the Army*, 123 M.S.P.R. 674, ¶ 11 (2016).  In such instances, once the agency proves its adverse action case by a preponderance of the evidence, the appellant must show by preponderant evidence that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action.  *Id*.

A protected disclosure is a disclosure of information that the appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8)(A).  The

---

[5] In *Thurman v. U.S. Postal Service*, 2022 MSPB 21, ¶ 17, we held that remand is not always necessary when an administrative judge fails to provide such notice.  Because we are remanding here, in any event, for the administrative judge to hold the appellant's requested hearing, this finding in *Thurman* does not impact our remand determination.

record below contains a copy of emails the appellant sent the then-Executive Officer of the Fairweather, and also forwarded to another agency official, in February 2015, in which he reported that a Chief Cook had a homeless shelter pick up approximately four to five pallets of meat because the Chief Cook did not believe the ship needed it.[6]  IAF, Tab 7 at 64-65.  The appellant stated that he valued the meat "conservative[ly] . . . in excess of Five thousand dollars," and referred to documentation "of the shelf life of many of the meats that were in the freezer."  *Id.* at 65.  During the proceedings below, the appellant alleged that the value of the lost meat was actually at or above $15,000.  RAF, Tab 18 at 4.  According to the appellant, the Chief Cook stated that he donated the meat because it was not fit for human consumption.  RAF, Tab 18 at 4.  The appellant alleged below that the Chief Cook's claim that the meat was unfit was incorrect.  Instead, "the meat was less than 90dyas old at the oldest. cryo-vaced and in the freezer the whole time."  *Id.* (spelling and punctuation as in original).  He also questioned the Chief Cook's claim that the meat was, in fact, donated.  *Id.* at 4.  In March 2017, the appellant forwarded his original emails to the individual in charge of the outside investigation that led to his removal, as well as to an agency employee assigned to assist in that investigation.  IAF, Tab 7 at 62-64, 113.

The administrative judge analyzed the appellant's emails as a potential disclosure of a violation of law, rule, or regulation, but was unpersuaded.  She found that the appellant failed to identify any law, rule, or regulation he reasonably believed was violated.  ID at 29-30.  To the extent that the administrative judge determined that the appellant was required to identify by citation the provision that he believed the agency violated, that was incorrect.  *Langer v. Department of the Treasury*, 265 F.3d 1259, 1266 (Fed. Cir. 2001).  Rather, it is sufficient if his "statements and the circumstances surrounding the making of those statements clearly implicate an identifiable violation of law, rule,

---

[6] The Executive Officer at the time was not the same Executive Officer who was in charge of the Fairweather at the time of the appellant's removal.  IAF, Tab 7 at 64.

or regulation." *Id.* On remand, the administrative judge should consider whether the appellant met his burden under this standard.

The administrative judge also held that the appellant failed to prove that giving away the meat in question was a gross waste of funds. ID at 29-30. She reasoned that the appellant's disclosure did not evidence an expenditure by the Government. *Id.* To the extent she imposed a requirement that a disclosure of a gross waste of funds must reflect a cost—versus a loss—to the Government, her reasoning was incorrect. This requirement is not imposed either by statute or case law. 5 U.S.C. § 2302(b)(8)(A); *see MacGowan v. Environmental Protection Agency*, 119 M.S.P.R. 9, ¶ 7 (2012) (finding an appellant made a nonfrivolous allegation that he disclosed a gross waste of funds regarding the agency's risk of losing funds obligated to contracts without ordering work). Nonetheless, we observe that, on remand, the appellant must prove that the $5,000 to $15,000 value of the lost meat was a more than debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the Government. *Id.*

The appellant below argued that the act of donating the meat could have affected the ship's ability to complete its mission because the ship had "no food at all." RAF, Tab 18 at 4. The administrative judge determined that the appellant's disclosure did not evidence gross mismanagement. ID at 30. She reasoned that the appellant needed to disclose "such serious errors by the agency that a conclusion the agency erred is not debatable among reasonable people." *Id.* (quoting *White v. Department of the Air Force*, 391 F.3d 1377, 1382 (Fed. Cir. 2004)). However, in *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 9 (2015), the Board recognized that the legislative history of the Whistleblower Protection Enhancement Act of 2012 criticized this language from *White* as potentially requiring an appellant to prove that the misconduct occurred, as opposed to that he reasonably believed it occurred. On remand, the administrative judge should apply the appropriate standard, i.e., whether the

appellant met his burden to prove that he reasonably believed the loss of the meat evidenced the kinds of misconduct listed in section 2302(b)(8). *Webb*, 122 M.S.P.R. 248, ¶ 9.

Turning to the contributing factor requirement, the administrative judge found that the appellant failed to prove that any disclosure he made was a contributing factor in his removal. ID at 30. She reasoned that more than 2 years had passed between the appellant's removal and his disclosure. *Id.* One way to establish contributing factor is the knowledge/timing test. *Wadhwa v. Department of Veterans Affairs*, 110 M.S.P.R. 615, ¶ 12, *aff'd per curiam*, 353 F. App'x 435 (Fed. Cir. 2009). Under that test, an appellant can prove the contributing factor element through evidence showing that the official taking the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* An appellant also may satisfy the knowledge element of the knowledge/timing test by proving that the official taking the action had constructive knowledge of the protected disclosure, even if the official lacked actual knowledge. *Nasuti v. Department of State*, 120 M.S.P.R. 588, ¶ 7 (2014). An appellant may establish constructive knowledge by showing that an individual with actual knowledge of the disclosure influenced the official accused of taking the retaliatory action. *Id*.

In applying the test here, the administrative judge appears to have considered only the appellant's February 2015 disclosure. However, as discussed above, the appellant re-disclosed this same information in March 2017, within months of when the agency proposed his removal in June 2017 and issued its removal decision in July 2017. IAF, Tab 7 at 62-64, Tab 9 at 5, 36. Thus, on remand, if the administrative judge finds that the appellant made a protected disclosure, she should address not only whether the appellant proved contributing factor as to his original disclosure, but also whether he did so as to his March 2017 disclosure. If the administrative judge concludes that the appellant did not

prove contributing factor under the knowledge/timing test, she should consider other evidence of contributing factor, if appropriate, such as evidence pertaining to the strength or weakness of the agency's reasons for taking the personnel action, whether the whistleblowing was personally directed at the proposing or deciding officials, and whether these individuals had a desire or motive to retaliate against the appellant. *Dorney v. Department of the Army*, 117 M.S.P.R. 480, ¶ 15 (2012). .

On remand, if the administrative judge finds that the appellant failed to prove his prima facie case of whistleblower reprisal, she should not go on to determine whether the agency proved by clear and convincing evidence that it would have, absent his disclosure, removed the appellant. The Board may not proceed to the clear and convincing evidence test unless it has first determined that the appellant established his prima facie case of whistleblower retaliation. *Clarke v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014), *aff'd per curiam*, 623 F. App'x 1016 (Fed. Cir. 2015).

We make no findings here as to whether the appellant can prove his prima facie case. We also do not determine whether, if he does, the agency can prove its affirmative defense. Those decisions can only be made in the first instance by the administrative judge after the hearing the appellant requested has taken place.

*Discrimination based on race and age*

Additionally, the appellant below alleged discrimination based on age and race. IAF, Tab 18 at 4. Following the issuance of the initial decision in this case, the Board issued *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶¶ 20-25, 30, which clarified the proper analytical framework to be applied to affirmative defenses of Title VII discrimination. Under *Pridgen*, the appellant bears the initial burden of proving by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Pridgen*, 2022 MSPB 31, ¶ 40. An appellant may prove a claim of discrimination under Title VII by a combination of direct or indirect evidence, including suspicious

timing, statements, or actions by agency officials from which an inference of discrimination might be drawn, evidence concerning the agency's treatment of similarly situated individuals outside the appellant's protected class, and evidence that the agency's stated reasons for the action were pretextual. *Id*. ¶ 24. None of the above types of evidence will be needed in every case. *Id*. On remand, the appellant should be provided the opportunity to present additional evidence regarding his discrimination claims at the hearing in accordance with the Board's decision in *Pridgen*.

Should the agency prove its charge and the appellant fail to establish his affirmative defenses, the administrative judge must determine whether the agency has met its burden of establishing a nexus between the action and the efficiency of the service, and that the penalty imposed is within the tolerable bounds of reasonableness. *Hall v. Department of Defense*, 117 M.S.P.R. 687, ¶ 6 (2012).

## ORDER

For the reasons discussed above, we remand this case to the Western Regional Office for further adjudication in accordance with this Remand Order.

*Gina K. Grippando*

FOR THE BOARD: _____
                              Gina K. Grippando
                              Clerk of the Board

Washington, D.C.